IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO. 2:12-CV-957-WKW [WO] |
| PRICEWATERHOUSECOOPERS, LLP, and CROWE HORWATH, LLP, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Colonial Bank ("Colonial," "the Bank") was a wholly owned subsidiary of the holding company the Colonial BancGroup., Inc. ("BancGroup"). The Bank was BancGroup's only asset of any significance, and its failure led to BancGroup's bankruptcy. The Federal Deposit Insurance Corporation ("FDIC") stepped in as receiver for Colonial upon its failure. In its capacity as receiver for Colonial, the FDIC has brought suit against two accounting firms hired by BancGroup to audit the Bank, alleging that the audit should have revealed the fraud that led to the Bank's ultimate demise.[1] Defendants PricewaterhouseCoopers LLP ("PwC") and Crowe

---

[1] There is a parallel suit in this court brought by BancGroup's bankruptcy trustee. *Colonial BancGroup, Inc. v. PricewaterhouseCoopers LLP*, 2:11-cv-746-MHT. Motions to consolidate the cases are pending.

Horwath LLP ("Crowe") each moved to dismiss (Docs. # 21, 22), and after briefing (Docs. # 21, 23, 32–35, 40, 46), the motions are ripe for resolution. The motions are due to be denied.

## I. JURISDICTION AND VENUE

The court has original jurisdiction over actions brought by the FDIC pursuant to 12 U.S.C. §§ 1345, 1819(b). The parties do not contest personal jurisdiction or venue.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the legal standard articulated by Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss brought under Rule 12(b)(6), a complaint must contain sufficient factual allegations, "accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While detailed factual allegations are unnecessary, the standard demands "more than labels and conclusions," something beyond a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. It is not enough for a plaintiff to allege that it is entitled to relief; it must plead facts that

"permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). The court need not, however, accept a plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 663. In addition to the complaint itself, on a Rule 12(b)(6) motion the court may consider documents to which the complaint refers and which are central to the plaintiff's claim, so long as the documents' contents are not in dispute. *Quail Cruises v. Agencia de Viagens*, 645 F.3d 1307, 1310 n.5 (11th Cir. 2011).

### III. BACKGROUND

From at least 2002 to 2009, the now-defunct Colonial Bank fell victim to a massive fraud that ultimately led to the Bank's collapse. Bank employees conspired with employees of Taylor Bean & Whitaker Mortgage Corporation ("TBW"), the Bank's mortgage lending division's biggest customer, to perpetrate and conceal the fraud, which apparently lined the pockets of Bank executives. The fraud caused Colonial to lend TBW hundreds of millions of dollars, effectively unsecured.

Like cat-skinning, bank fraud lends itself to multiple approaches. In effectuating this scheme, TBW – among other things – recorded loans it received as

sales made, a practice that enabled TBW to obtain continued financing in excess of the regulatory limit the Bank could lend to a single borrower.  Two Colonial Bank insiders – Catherine Kissick and Teresa Kelly – assisted TBW insiders in some of its efforts.  According to the FDIC, Kissick and Kelly allowed TBW to overdraft its account and then helped conceal the practice by temporarily transferring funds into the account.  Later, they arranged for TBW to sell pools of worthless mortgages – mortgages already sold to other institutions or for which collateral was insufficient or non-existent – to Colonial.

The FDIC alleges that the fraud did not benefit the Bank and was instead detrimental, leading to the Bank's ultimate collapse. The fraud did, however, benefit TBW executives, most notably its chairman Lee Farkas.  Along with other TBW employees, Farkas, Kissick, and Kelly were convicted of criminal conspiracy for their roles in the scheme.

Defendants are the accounting firms who served as the Bank's auditors – retained by BancGroup – during the relevant time period. Crowe provided the internal audit while PwC performed the external audit.  Both accounting firms used limiting

language in their respective engagement letters reflecting that the audits were conducted for BancGroup only.[2]

The FDIC asserts that PwC issued unqualified opinions that Colonial Bank had fairly stated its financials and employed effective internal controls, while Crowe overlooked serious internal control issues and failed to properly evaluate controls for the financial programs used by TBW.  In short, Defendants failed to detect the fraud, and the FDIC argues they should therefore be responsible for Colonial's losses caused by their audits.

## IV.  DISCUSSION

The FDIC brings four state law claims.  Count III is a breach of contract claim that names only PwC.  Counts I, II, and IV are claims for professional negligence, gross negligence, and negligent misrepresentation, respectively, and name both PwC and Crowe.

---

[2] The relevant language from PwC's engagement letter reads:  "The financial statement audit and the audit of the BancGroup's internal control over financial reporting will not be planned or conducted in contemplation of reliance by any specific third party or with respect to any specific transaction."  (Doc. # 21-2 at 4.)
   In its engagement letter, Crowe, then known as Crowe Chizek, first defined BancGroup as the "Bank."  (Doc. # 23-1 at 2.)  The letter went on to say, "This Agreement is between the Bank and Crowe Chizek only.  It is not intended that any other person or organization rely on the services rendered by Crowe Chizek under this letter."  (Doc. # 23-1 at 2, 12.)
   The FDIC has not disputed the contents of either engagement letter.

PwC raises a number of defenses that rest on imputing the conduct and knowledge of Bank insiders to Colonial, and in turn, to the FDIC, to estop the FDIC from raising claims against PwC. The court will take up that argument first. Next, it will address the contours of negligence claims against accountants and who may raise them, as both PwC and Crowe argue that the FDIC, acting on behalf of Colonial, may not bring such claims. Then, the court addresses PwC's motion as it pertains to the breach of contract claim against PwC. Finally, the court will address Defendants' remaining defenses.

### A. Alabama law, not federal law, governs the extent to which the conduct and knowledge of Bank insiders may be imputed from the Bank to the FDIC.

In support of its imputation argument, PwC cites *O'Melveny & Myers v. FDIC*, 512 U.S. 79 (1994), wherein the Supreme Court of the United States held that the FDIC "steps into the shoes of the failed" institution and obtains the institution's rights as they "existed prior to receivership." *Id.* at 86 (quotations omitted). When the FDIC acts on behalf of a bank, "any defense good against the original party is good against the receiver." *Id.* (quotations omitted).

In *O'Melveny*, two bank officers, who were also the bank's only shareholders, engaged in a fraud scheme that placed the bank under investigation with state and federal regulators. *Id.* at 81. During that time, O'Melveny & Myers – a law firm –

represented the bank in connection with a series of real estate transactions. *Id.* Shortly after those transactions closed, the bank failed and went into receivership. *Id.* at 81–82. As receiver, the FDIC rescinded the real estate transactions and refunded investors' money. *Id.* at 82. It then sued the firm, alleging the state law causes of action for professional negligence and breach of fiduciary duty, based on the firm's failure to investigate the bank's financial status during the transactions. *Id.*

The case presented two questions: (1) Did state or federal law determine whether the officers' knowledge and conduct could be imputed to the bank? (2) Did state or federal law determine the more narrow question of whether that knowledge could be imputed a step further, to the FDIC acting as receiver for the bank? *Id.* at 83. The Court answered "state law" to both questions. The first was easy: "'There is no federal general common law,'" *id.* (quoting *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)), and federal courts should not divest "States of authority over the entire law of imputation." *Id.*

The second question was more difficult, but the Court's answer was still clear. The Court rejected the firm's argument that provisions of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101-73, 103 Stat. 183 (codified in scattered sections of 12 U.S.C.), explicitly displaced state law on imputation to the FDIC. *O'Melveny*, 512 U.S. at 86 (analyzing 12 U.S.C.

§ 1821(d)(2)(A)(i)). The Court held that provisions of the FIRREA "specifically create special federal rules of decision regarding claims by, and defenses against, the FDIC as receiver," but none of those provisions applied to the imputation of fraudulent conduct from an officer to a bank to the FDIC. *Id.* Accordingly, state law governed that question. *Id.* Creation of additional "federal common-law" would, in the eyes of the Court, alter – not supplement – the existing scheme under the FIRREA. *Id.* at 87.

The procedural history of *O'Melveny* highlights the Court's holding that state law applies. In *O'Melveny*, the district court granted summary judgment in favor of the firm, apparently under the impression that the conduct could be imputed to the FDIC under California law. *FDIC v. O'Melveny & Myers*, 969 F.2d 744, 747 (9th Cir. 1992). The Ninth Circuit reversed and fashioned a federal rule of decision preventing imputation and protecting the FDIC, *id.* at 751, a rule akin to the one the FDIC argues applies in Alabama. The Supreme Court then reversed the Ninth Circuit and emphasized that California, not federal, law applied. *O'Melveny*, 512 U.S. at 87. By the same token, Alabama law applies here despite any difference in the substance of Alabama's rule compared to California's or any other state. The FIRREA constitutes a grant of rights to the FDIC when acting as receiver. Those rights are defined by reference to that statutory scheme, and, where it is silent, state law applies. "[E]xcept

8

where some provision in the extensive framework of FIRREA provides otherwise," the Act "places the FDIC in the shoes of the insolvent [bank], to work out its claims under state law." *Id.*; *see also Grant Thornton, LLP v. FDIC*, 435 F. App'x 188, 201 (4th Cir. 2011) (affirming district court's application of West Virginia law to preclude certain affirmative defenses in state law cause of action for negligent audit, where those affirmative defenses relied on imputing bank insiders' knowledge or conduct to the FDIC); *FDIC v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir. 1995) (concluding, on remand, that under California law, defenses based on a party's unclean hands would not apply against the FDIC).

PwC's arguments to the contrary are unavailing. PwC seizes on the "prior to receivership" language in *O'Melveny*, 512 U.S. at 86, to argue that what the FDIC asserts is Alabama's rule creates rights in a receiver that did not exist before receivership. PwC's argument stretches that language beyond its use in *O'Melveny*; the substantive analysis of *O'Melveny* makes clear that the FDIC assumes the position a receiver would have under state law, except where the FIRREA provides otherwise. When it considered virtually the same question presented by this case – whether the knowledge and conduct of a bank's insiders could be imputed from the bank to the FDIC acting as receiver – the Supreme Court concluded the FIRREA did not offer an answer and that state law therefore governed.

**B.     Factual questions on imputation prevent dismissal at this stage.**

While the court finds that Alabama law, not federal law, applies to determine whether the conduct and knowledge of Colonial Bank insiders may be imputed from the Bank to the FDIC, it does not reach a finding on what the Alabama rule *is* for two reasons. First, the parties devoted much of their briefing to the question of which law would apply, not what Alabama's rule is, should it apply. Second, for the purposes of resolving Defendant PwC's motion, if the court assumes the rule is as PwC argues – that imputation to the FDIC is allowed under Alabama law – then, questions of material fact prevent dismissal.

Imputation of the conduct and knowledge of Kissick, Kelly, and – for the purposes of PwC's contributory negligence argument – in-house auditor Pam Vitto would require a finding that those insiders acted within the scope of their employment when they participated in or failed to discover the fraud. That fact question, if disputed, is one a jury must resolve under Alabama law. *Meyer v. Wal-Mart Stores*, 813 So. 2d 832, 834 (Ala. 2001). At least four of the nine articulated grounds for PwC's motion to dismiss require a conclusion the court cannot reach at the Rule 12(b)(6) stage, (Doc. # 21 at 3–4 (raising imputation defenses)), and the court, therefore, will not grant the motion on those grounds.

## C. The FDIC's professional negligence claims against both PwC and Crowe survive Defendants' motions to dismiss.

The parties disagree about whether those not in privity with an accountant may assert a cause of action for negligence against the accountant. Alabama follows the Restatement (Second) of Torts in determining the professional liability of accountants. *Boykin v. Arthur Anderson & Co.*, 639 So. 2d 504, 509–10 (Ala. 1994), *overruled on other grounds by Altrust Fin. Servs. v. Adams*, 76 So. 3d 228 (Ala. 2011). Under § 552 of the Restatement, accountants may be liable for their negligence in supplying false information if a plaintiff justifiably relies on that information, and in so doing, suffers a loss. *Id.*; *see also Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455, 462 (Ala. 2000) (applying the same standard to a real estate appraiser's tort liability to a third party). That liability, however, extends only to loss suffered:

(a) by the person or one of a limited group of persons for whose benefit and guidance [the accountant] intends to apply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Boykin*, 639 So. 2d at 510 (quoting Restatement (Second) of Torts § 552(2) (1997)).

Applying that standard, there is a question of fact whether Colonial, as opposed to BancGroup with whom both PwC and Crowe contracted, is eligible to recover as defined by the Restatement. The language of the engagement letters, *see supra* note

11

2 (quoting relevant language), does appear to be an attempt by the accounting firms to limit their respective liabilities. The practical realities of the relationship between the Bank and BancGroup, whereby the Bank was a wholly owned subsidiary of BancGroup and BancGroup's only asset of any significance, call those limitations into question.

More importantly, however, the FDIC alleges facts in its complaint suggesting that both Crowe and PwC, in their respective work for BancGroup, intended their work to benefit the Bank as well as BancGroup, and knew that BancGroup intended to supply the information to the Bank. (Doc. # 29 ¶¶ 22, 91, 98.) In the case of Crowe, the engagement letter indicated Crowe would "grant federal and state banking regulators full and timely access to the internal audit services reports and related workpapers [it] prepare[d]." (Doc. # 23-1 at 3.) Colonial – not BancGroup – was the entity subject to state banking regulations. As for PwC, the FDIC alleges PwC was aware its audit would serve as Colonial's required audit pursuant to 12 U.S.C. § 1831m, though its agreement was with BancGroup. In light of these allegations, the court cannot conclude as a matter of law at this stage that Colonial is precluded from bringing suit for professional negligence under Alabama law and Counts I, II, and IV survive Defendants' § 552 argument.

Defendants urge the court to dismiss Counts I and II, where the FDIC alleges negligence and gross negligence against both PwC and Crowe. They argue that after Alabama's adoption of the Restatement, the only cognizable claim for an accountant's professional negligence is a claim for negligent misrepresentation under § 552. The court declines the invitation to limit the FDIC's negligence claims on that basis.

First, the Alabama Supreme Court's analysis in *Boykin*, when it adopted § 552 of the Restatement, is framed in terms of *who* may bring claims against accountants, not what claims a plaintiff may bring. Discussion of the Restatement standard focused on how that standard differed from the "near-privity" standard previously applicable in Alabama under *Colonial Bank of Alabama v. Ridley & Schweigert*, 551 So. 2d 390 (Ala. 1989). *See Boykin*, 639 So. 2d at 510 (remarking that "[t]he adoption of the Restatement rule for the professional liability of accountants should clarify the confusion exhibited by the trial court in this case as to the privity required" under *Colonial Bank*).

Second, the *Boykin* Court spoke generally about "professional negligence." *See, e.g.*, *id.* at 508 ("The trial court's rationale for dismissing the claims against the accountants was that the test for holding accountants liable for professional negligence in this state includes a 'near-privity' requirement, which it says the plaintiffs failed to meet."). Though it made clear it was adopting § 552 as the standard by which

13

accountants' negligence would be judged, nowhere did it expressly limit claims to only claims based on negligent misrepresentations, as opposed to other theories of professional negligence. *See id.* at 510 ("The Restatement adopts the cautious position that an accountant may be liable to a third party with whom the accountant is not in privity, but not every reasonably foreseeable consumer of financial information may recover." (quoting *First Nat'l Bank of Commerce v. Monco Agency, Inc.*, 911 F. 2d 1053, 1060 (5th Cir. 1990) (alterations omitted))). Defendants have cited no binding authority to support their position that, in adopting § 552 as the standard for who may bring a professional negligence claim against an accountant, Alabama courts eliminated professional negligence claims based on theories of negligence other than negligent misrepresentation.[3] Accordingly, the claims for negligence and gross negligence – already closely related to the claim for negligent misrepresentation – will go forward.

### D. The FDIC's allegations sufficiently support its breach of contract claim against PwC.

PwC argues that the court should dismiss the breach of contract claim against it because Colonial Bank was not an intended beneficiary of the audit agreement

---

[3] The court expresses some doubt that, at least in an audit context, claims against accountants based on other theories of negligence are distinguishable from claims for negligent misrepresentation. It would appear that negligent application of standard accounting principles in an audit would virtually always lead to a material mistake or omission in an audit report or some other representation to the client.

between it and BancGroup. In Alabama, a third party bringing a claim for breach of contract "must establish that the contracting parties intended, at the time the contract was created, to bestow a direct, as opposed to an incidental, benefit upon" the third party. *Colonial Bank of Ala. v. Ridley & Schweigert*, 551 So. 2d 390, 395 (Ala. 1989). PwC argues that language in its agreement with BancGroup disavows any intention to create third-party beneficiaries. The engagement letter provides: "The financial statement audit and the audit of the BancGroup's internal control over financial reporting will not be planned or conducted in contemplation of reliance by any specific third party or with respect to any specific transaction." (Doc. # 21-2 at 4.)

Like the professional negligence claim, the complaint's allegations create a question of fact whether BancGroup and PwC intended to bestow a direct benefit on the Bank as a result of the agreement, despite the limiting language in the engagement letter. First, the court cannot say that the language of the engagement letter, which reflects the intention that the audit would "not be *planned* or *conducted* in contemplation of reliance by" third parties (Doc. # 21-2 at 4 (emphasis added)), amounts to a complete disavowal of third party rights. *Cf. Ex parte Cintas Corp.*, 958 So. 2d 330, 333 (Ala. 2006) (holding that a clause reading, "Nothing in this Agreement is intended or shall be construed to give [third parties] any legal or equitable right . . . ." unambiguously denied third parties rights). Second, the FDIC

15

has alleged facts that suggest Colonial was an intended beneficiary. According to the complaint, PwC knew that Colonial would use PwC's audit to satisfy its obligation under 12 U.S.C. § 1831m to submit an annual report on its financial condition and management. (Doc. # 29 ¶ 91.) The FDIC further alleged that PwC knew BancGroup intended to and would deliver the audit to Colonial and that Colonial would rely on it. (Doc. # 29 ¶ 91.)

The court cannot, at this early juncture, rule as a matter of law that the FDIC was not an intended beneficiary. Further, the court finds that the allegations of the FDIC's complaint regarding BancGroup's performance under the contract are sufficient to allow the claim to advance to discovery.

### E.     PwC's other defenses fail at this stage.

PwC argues that Colonial has not adequately alleged that PwC's audit caused the Bank's losses. Where reasonable inferences support a plaintiff's theory, proximate cause is question for a jury. *Wilbanks v. United Refractories, Inc.*, 112 So. 3d 472, 475 (Ala. 2012) (analyzing inadequate proximate cause as a basis for motion for summary judgment). Taking the FDIC's allegations as true, as it must on a Rule 12(b)(6) motion to dismiss, the court finds that the FDIC has adequately alleged that PwC caused the Bank's losses. (*See, e.g.,* Doc. # 29 ¶¶ 37, 42, 44, 48 (alleging means

16

by which PwC's audit should have revealed accounting discrepancies suggestive of fraud).)

With respect to the allegations found in Paragraph 21 of the FDIC's Amended Complaint, however, the FDIC must replead. The allegations are thin and offer no supporting facts connecting the double- and triple-pledging fraud alleged in Paragraph 21 to PwC's audit. The FDIC shall have ten days to amend its complaint and replead these allegations with supporting facts, if supporting facts exist.

### F. Crowe's remaining defenses also fail.

In addition to the language Crowe included in its engagement letter indicating that the audit agreement was only between it and BancGroup, Crowe's engagement letter also included a clause limiting damages available in the event of liability. The clause reads: "NO PUNITIVE OR CONSEQUENTIAL DAMAGES – Any liability of Crowe Chizek to you shall not include any special, consequential, incidental, punitive, or exemplary damages or loss nor any lost profits, savings, or business opportunity." (Doc. # 23-1 at 9, 19 (emphasis in original).) Assuming, without deciding, that this limitation applies to the FDIC as receiver for Colonial Bank just as it would to BancGroup, the court cannot grant Crowe's motion to dismiss on the basis of this limitation alone. The complaint alleges that the damages claimed are a "direct" result of Crowe's alleged negligence. (Doc. # 21 ¶¶ 86, 89.) Without the benefit of

discovery, the court is in no position to conclude that the losses the FDIC alleges are attributable to Crowe are subject to the exclusion.

## V.  CONCLUSION

Accordingly, it is ORDERED that Defendants' Motions to Dismiss (Docs. # 21, 22) are DENIED.  The FDIC has leave to file an amended complaint to include factual allegations plausibly connecting the double- and triple-pledging scheme alleged in Paragraph 21 to conduct of PwC **on or before September 16, 2013**.

DONE this 10th day of September, 2013.

                                             /s/ W. Keith Watkins
                               CHIEF UNITED STATES DISTRICT JUDGE